The Honorable, the judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez, all persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to draw an eye and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Good morning everybody, please be seated. I want to welcome everybody to the United States Court of Appeals for the Fourth Circuit. We have three cases on for argument this morning. The first is 22-7199, Anderson v. Ferguson. Ms. Stetson, you have an introduction to make. Good morning, Your Honors, and may it please the Court. My name is Kate Stetson. I am here this morning in my capacity as a supervisor of the University of Virginia School of Law Appellate Litigation Clinic, and it is my pleasure to introduce to you Ames O'Boyle and Anthony Valdez, who will be presenting argument as court-appointed amicus. Thank you. Thank you very much, Ms. Stetson. Mr. O'Boyle, whenever you're ready, sir. Thank you, Your Honor, and may it please the Court. My name is Ames O'Boyle, and my colleague, Anthony Valdez, and I were appointed by this Court as amicus on the excessive force issue. You might want to move that mic to the extent you can, a little bit closer, up close to you. How's that? Any better? We'll give it a shot. Go ahead. This case is here on appeal from a grant of summary judgment. A core factual issue is whether Mr. Anderson was resisting and posed a threat when Officer Ferguson used the mandibular angle pressure point against him. The officers submitted affidavits saying that Mr. Anderson was resisting, but the video footage in the record appears to conflict with that characterization. When properly construing the video at this stage of the litigation and making all reasonable inferences in Mr. Anderson's favor, genuine issues of material fact exist, and a reasonable jury could find that Officer Ferguson's use of mandibular pressure constituted excessive force. So before we get into Officer Ferguson, can I just make clear something I think is pretty clear from the briefs? We are only talking about the district court's grant of summary judgment as to Officer Ferguson, right? We're not challenging the district court's order as to the other people who were named as defendants? Correct, as to the other people named as defendants. There is the denial of leave to amend issue as well. Sure, but not in terms of the grant on the existing record as to that. Okay, that's correct. Now, Graham v. Conner directs our attention to three factors, the severity of the crime at issue, whether the suspect poses an immediate threat, and whether the suspect is actively resisting or fleeing arrest. And this Court has been clear that in considering the reasonableness of the officers' actions, we need to consider the facts at the moment that the challenged force was used. So I'd like to take a minute to be clear about what the facts at the moment show here. Mr. Anderson was face down on the ground with his hands tightly handcuffed behind his back and his pants and underwear down around his ankles. Officer Ferguson was holding on to his hands and Officer Wagner was holding on to his elbow. Over the span of just five seconds, Officer Ferguson twice tells Mr. Anderson to stop resisting while pulling him up by the back of his jacket and then forcefully drives his thumb into Mr. Anderson's mandibular nerve for nine seconds. So can I ask you about that sequence of events? And you're relying, obviously, on the video in describing what happened here? That's correct.  So in the district court, when Mr. Anderson was objecting to the magistrate judge's recommendation, he was pro se, right, at the time. Correct. And in paragraph 55 of that objection, he said this, during the existence of plaintiff's insanity, and it appears, obviously, that Mr. Anderson has some mental health issues, and so he says that as a prelude. He then says, Plaintiff begins, he says begins, to continue rocking back and forth before Officer Ferguson yells, stop moving. And didn't I say to stop effing moving? Okay. So do you agree that in addition to the video, we're supposed to take the entire record in deciding whether or not there was a violation, first of all, and then deciding whether or not to hold this officer liable as a matter of qualified immunity? Do you agree with that? I agree with that, Your Honor, but I actually don't think that his statements there were an admission that he was moving. When you look at his objections pertaining to the use of the mandibular angle pressure point, he almost entirely quotes from statements by defendants and the district court. And I think when you compare his objections in paragraph 55 and the beginning of 56 to what the magistrate judge says at JA 162, I believe, it's clear that he is quoting the way that the district judge characterized it. Why is it clear? Why is it clear to you? It's almost identical language. Okay. In what context is that paragraph being offered? Paragraph 55?   I think what Mr. Anderson does often when you look at his mandibular objections is that he quotes other language that was used in an attempt to disagree with those characterizations. And I would also point, Your Honors, to his initial complaint at JA 16 and 17 where he does say that he was clearly not resisting or a threat in any way. Is there a difference between resisting? Well, obviously there is. Between resisting and moving, do you concede that he might have been moving? Yes, as well, Your Honor. Just, you know, his movements don't necessarily mean that he was actively resisting. And we think that there is a question of fact as to, you know, how far, whether his movements arise to the level of resistance and whether Officer Ferguson's perception that he was resisting was a reasonable perception. So just to clarify, you anticipated the thing I was about to ask. The question, right, is not under the Fourth Amendment, not whether he was in fact resisting in his own head. It's not even really whether he was in fact resisting to, like, if we have the God's eye view with perfect knowledge of everything that was happening, whether he was actually resisting from that perspective. The question is what a reasonable officer in Officer Ferguson's position could have perceived at the time is the actual question, right? That's correct, Your Honor. So, like, I mean, a real example, like, say it's not in fact a volitional movement, so it's not in fact resisting arrest for criminal law purposes or anything like that, but if the officer believed it was, that could matter for the Fourth Amendment analysis. Whether a reasonable officer could have, because, of course, things under the Fourth Amendment is not also actually what the officer himself actually thought. It's what a reasonable person in the officer's position could have reasonably thought. Absolutely, Your Honor. And the video footage here, the uncertainty in it, we think, creates a genuine issue about whether that perception that he was resisting was a reasonable perception. Now, you know, the video is not entirely clear, so when we watch the video and make reasonable inferences, it does appear to show that he is not actively resisting, and at worst he is slightly squirming or rocking under the weight of the officers on top of him. In addition, I also want to point out the conduct of the other two officers. At some point while this encounter is going on, Officer Wagner moves his hands to casually rest at his sides, and Officer Phillips turns his back and begins walking away from the scene. Now, the district court correctly held that the first factor weighed in Mr. Anderson's favor because his crimes were minor. Wait, can I ask you, the behavior of the other officers, I think I understand why you think that's relevant, but could you just articulate a little bit more why the hands and sides walking away, why does that matter? On the second factor, whether Mr. Anderson is a threat, the conduct of the officers there indicates that they did not legitimately perceive him to be a threat, and I would point to this court's decision in Sawyer v. Ashbury where the court said the conduct of the two deputies is a powerful indicator that a need to deploy a violent force was not apparent to a reasonable officer. So, okay, so just again, the fact that two other people acted in ways that suggested they didn't think he was resisting or a danger is indirect evidence that a reasonable officer in Officer Ferguson's position could not believe that he was a danger. That's the sort of chain of reasoning? Correct, Your Honor.  And, you know, in addition on this second factor here, so the district court believed that he was an immediate threat because he was reasonably believed to be armed and because it said he was resisting. But this court has said that an armed but handcuffed suspect poses little if no threat, and the reasonable inference we make is that he was not resisting. The totality of the circumstances at the moment also show that he was not a threat or an immediate threat because he was secured both by handcuffs and multiple officers. Then on the third factor, at the moment force was applied, he was no longer fleeing, and as discussed, there's a question of fact as to whether he was resisting. So Officer Ferguson's use of mandibular pressure when we make reasonable inferences in Mr. Anderson's favor was excessive and objectively unreasonable. Is the extent of the force at all relevant here in response to what you concede at least was movement, if not resisting? The extent of the force and, say, any injuries that arise from it are relevant, and I would like to point out that the mandibular pressure point is a serious, you know, pain compliance technique that puts substantial pressure on a nerve ending and is incredibly effective at getting resisting suspects to comply with orders. And I'd also point to the Sixth Circuit's decision in Lunine which said that the mandibular pressure point can create is a substantial, you know, pain compliance technique that can cause asphyxiating conditions. Now, on the clearly established prong, this Court and Supreme Court have reaffirmed that we don't need a case dealing with 100% identical facts. But the principles and direct holdings of multiple of this Court's cases repeatedly and distinctly establish the principle that it's excessive to use unnecessary, gratuitous, and disproportionate force against a suspect who is secured, not a threat, and not resisting. I'd like to quote from a few of this Court's decisions. But would it have been clear to Officer Ferguson that he couldn't use this minimal level of force, granting that you say that it does, its pain compliance can be quite painful in the circumstances, but given the fact that he had issued a command for Mr. Ferguson to stop moving and he perceived and not actually understood that Mr. Anderson wasn't compliant with that command, that this minimal in the scale of things of the force that could have been applied, this level of force, is it clearly established that the officer could not have used that level of force to gain compliance in order to have Mr. Anderson adhere to the command to stop moving? Your Honor, on summary judgment, when we make all these reasonable inferences for Mr. Anderson, that he was not resisting. We're accepting those facts, but I think you also have to accept the fact that there was at least some movement. Is that relevant here? Well, Your Honor, I would respectfully disagree that there is at least some movement. I think when you watch the video from approximately 1.37 to 2 minutes, it quite plainly shows Mr. Anderson is not really moving in any substantial way. I thought you told us earlier that he was. If the court believes that there is some movement, that doesn't necessarily mean that the force was automatically justified. It doesn't automatically mean that he was resisting. No, but it might be relevant to the clearly established question. Yes. Yes, Your Honor. So you're not conceding that he was moving. You're just suggesting that even if he was, you still don't think that an officer in Officer Ferguson's position would have understood clearly as a matter of law that he couldn't use this again in the grand scheme of the force scale that could have been applied, this level of force, to gain compliance. That's your position? Yes, Your Honor. And, you know, the very summarized answer here is that this court's cases focus substantially on whether a suspect poses a threat and whether they are actively resisting. And this court has said, for example, in Jones v. Buchanan, when it characterized its earlier decision of Cain v. Hargis, the court said that, quote, it would have been apparent in 1990 to a reasonable officer that his use of force when he pushed the woman's face into the ground was excessive because after the officer had secured the plaintiff, she did not pose a threat and any additional use of force was unreasonable. Can I ask you with your remaining time to say a little bit about the leave to amend issue? Absolutely, Your Honor. Two points on this issue. One is that the court was clear in Nicholson v. Medcom that, quote, it is an abuse of discretion for the district court to fail to identify which of the three permissible reasons it relied on. And I'd also like to point out in Apelli's brief on page 51, they cite James v. Jacobson for the proposition that for there to be abuse of discretion, the court must find a failure or refusal actually to exercise discretion. And I think that citation omits crucial context because the full quote states that abuse of discretion can occur in a number of ways, and that a failure to exercise discretion is one manifestation of abuse. But, quote, another way, crucial there and here, is by failure in attempting to exercise discretion adequately to take into account judicially recognized factors constraining its exercise. So with respect to that issue, what would have been the claims that your client would have lodged against the other officers? I mean, it seems like he lodged a series of fantastical claims that turned out to be completely rebutted by the videotape evidence. And if we find that to be the case, and if we're inclined to, as we should be, I think, to affirm the district court on any reasons apparent in the record, why isn't futility a ground to reject this claim of a motion to amend? And, you know, the court in MedCom said that if you believe the district court's reasoning was apparent, it's not an abuse of discretion. But he—I can't speak to all the claims he might hope to assert, but I think the core claim against these other two officers is the claim about sort of the sexual assault or searching his butt. And the video is obscured for approximately 12 seconds, 15 seconds by Officer Ferguson's hands. And we think that that obstruction and the inability to see what happens means that it is not a futile claim as a matter of law. I see that I am out of time. All right. Thank you very much. Thank you. Mr. Morgan. Thank you. May it please the court, I'm Jim Morgan. I'm here representing the officers, and we'll just focus on Officer Ferguson. Before I go any further, I'd like to introduce the Winston-Salem City Attorney, Angela Carman, who's sitting right there. I've been working with her for 20-some years, and she came up here to support me. And the lady sitting beside her is Camille French, who will be the new city attorney come January. I just wanted to make that introduction to the court. Your Honors, the only claim being pursued for purposes of this appeal is the, what I call, a new claim for excessive force against Officer Ferguson in his individual capacity based on his brief use of an accepted and recognized law enforcement technique that we call the mandibular angle pressure point technique, which I'll probably just call pressure point technique from now on. First of all, I would like to just point out what was pointed out in filings with this court, and that is that the plaintiff has waived appellate review of this particular claim because he failed to file specific objections. If you read. Mr. Morgan, can I ask you as a threshold, do you say that we should dismiss the appeal because of that? Have you been able to identify any case where we have dismissed the appeal for failure to adequately object to a magistrate's report? It feels like we just affirm, not dismiss the appeal. Well, maybe I read the case wrong. I cited a case in there where I believe that the appeal was dismissed. But, yes, if you affirm it, you get the same result. I think in the case of U.S. v. Midgett, the holding was we hold now that to preserve an appeal, that to preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity as reasonably to alert the district court of the true ground of the objection. Okay, but we also have had two published opinions that I'm personally aware of in the last year and a half in which we have emphasized that particularly as it relates to pro se litigants, that is a low standard, right? I hear what you're saying, Your Honor. Like we've reversed district courts who have basically found things were forfeited on the grounds of no, no, no. There's no, this is not a like, you know, questions presented like in a Supreme Court brief. This is not like that. You can just say I think the magistrate judge was wrong in concluding there wasn't excessive force here, and that's basically enough. Well, Your Honor, the cases that were cited by the plaintiff, as I put in my brief, they're distinguishable because in those cases the pro se plaintiff actually mentioned the issue. Well, doesn't he mention the fingernails behind his ear and the thumb or something behind his ear? I think there was a reference somewhere to a thumb behind the ear before he was handcuffed. JA-17, doesn't he say that in the complaint at JA-17? Sorry, not in the complaint, but you know. I don't remember the site, but I believe in the complaint he talked about fingernails behind the ear. Stuck his fingernails behind my ears as I got handcuffed. Does that sound familiar? That sounds familiar. I would say that there's no, I'll just put it this way. I won't belabor the point. If you read the objections of the plaintiff, I believe you should conclude that he did not object to the mandibular pressure point technique at all. He reiterated his belief that he was sexually assaulted, which, as you say, was fabricated. He talked about the choke hold. He talked about getting knocked off the bike. But if you read the objections about the mandibular pressure point technique, what you find is him saying it was an accepted law enforcement technique. If the standard is that the court is supposed to be on notice that this was an issue, those objections did not put the district court on notice that that was an issue. And I would just submit to you that, in my opinion, as an officer of the court, you would have to rewrite the objections in order to conclude that he preserved that issue. But I'll get on to the next part. I think that's adequately argued in the briefs. So, because I suspect we're about to get into the merits of the Fourth Amendment, can I just take you to the leave to amend issue for just a second because I only have like one or two questions about that? Sure. In what way was the district court's denial of leave to amend premised on bad faith, prejudice to the nonmoving party, or futility? Because when I read the district court's explanation for why it denied the leave to amend, it does not identify any of those three reasons. And I think we've said those are the only three valid reasons for denying leave to amend. I think you can conclude that futility was the reason. But what I said in our brief is I emphasized that it's a discretionary. No, it's not discretionary. We've said district courts do not have discretion to deny leave to amend except on those three grounds. There is no discretion to add a fourth ground. I would say this. The video shows it would be futile.  You make your ruling on that. Okay. I think that was my only question about that. Okay. Great. Officer Ferguson moved for summary judgment. He supported it with an affidavit and an authenticated body cam video. The plaintiff didn't file affidavits. The plaintiff did not file any evidence. The plaintiff in his response to summary judgment didn't mention the mandibular pressure point technique, even though it was brought up in our summary judgment brief because it's right there on the video. The rule that the Supreme Court has articulated is a plaintiff cannot defeat summary judgment by simply asserting the jury might disbelieve the plaintiff. The plaintiff can't rest upon mere allegations or denials in his pleadings. The plaintiff must produce specific evidence rather than resting upon bald assertions. And I would submit to you that because of the posture of this case, this isn't a case where the plaintiff gave one affidavit and the defendant gave another, so you don't look at whether the video is unclear. If it's unclear, then you've just got to dispute a fact, just like any other case. This is a case where only one side gave evidence, so what you look at is does the video blatantly contradict that evidence? The answer is no, it doesn't. Wait, we asked whether the video blatantly contradicts what the defendant says? Yes. What case says that? Well, outside of the case, Sawyer v. Asbury. I understand Scott v. Harris says if the plaintiff, the party opposing summary judgment, so take a step back. Normally speaking, if the party opposing summary judgment files an affidavit saying this is what happened, you have to credit that for summary judgment. Scott v. Harris says, well, except when there's a video that literally blatantly contradicts everything the plaintiff says, then you can disregard it. But I'm not aware of any case that says in situations where the plaintiff doesn't submit an affidavit but the defendants do, the question is whether the video blatantly contradicts what the defendants say. I don't know any case that has applied Scott, well, let me rephrase, I don't know any case that is controlling on this Court that has applied Scott v. Harris in that way. Most cases applying Scott v. Harris deal with the situation where two sides give different. Right, and then we say we can disregard the nonmoving party's affidavit. Totally fair. But I don't know any case that talks about in situations where the moving party's affidavit does not blatantly contradict the video, you have to assume the nonmoving party is telling the truth. Sorry, the moving party. In Sawyer v. Asbury, what the statement was, video controls only where it blatantly contradicts, and then it uses the term testimony. Yes, the testimony from the party opposing summary judgment, not the parties. In that case, it was talking about the plaintiff. Right, which makes total sense because Scott v. Harris is a narrow exception to the general rule that when the plaintiff says X, you have to believe him for summary judgment. In this case, we have a situation where the plaintiff did not say anything. Totally agree. And what the plaintiffs are trying to argue now is that because there's a video that doesn't show every single thing that happened, you have to conclude, you have to, in essence, it's really the same, to me it's the same as the summary judgment standard. Why doesn't it mean we have to construe the video in the light most favorable to the plaintiff? I would just say my argument is that if the video doesn't blatantly contradict what Officer Ferguson said, then the video is irrelevant for summary judgment purposes. This is turning the summary judgment standard on its head. I mean, we're supposed to construe the evidence in the light most favorable to the nonmoving party. That means all of the evidence, affidavits, video, whatever happens to be in the record, right? In the situation where one party testifies, if there were no video, you wouldn't say, well, there's no video, so it's unclear what a video might have shown. Here you've got a video that supports what, I would say supports what Officer Ferguson said. Well, that's a different argument, I suppose, but they say otherwise. Well, let me just, let me move to that. The plaintiff in his brief, appellant's brief, said there was squirming and movement right before the mandibular pressure point technique was used. Can I ask you before you get to that about the objections that he did file? Because, you know, when I first read that paragraph 55, I thought that was a statement of fact that Mr. Anderson was making about conceding essentially that he was moving, but your colleague on the other side said, no, no, no, no, he's just reciting what the magistrate judge is saying about the record. So what's your view on that? Well, if you look at the objections, there are a bunch of them. And where the plaintiff doesn't agree with the magistrate, he's real clear about that. He says, the plaintiff says in his objections, I was sexually assaulted. I was knocked off the moped and that was excessive force. I was put in a chokehold until I passed out. He says things like that. That's not something the magistrate said. The magistrate said he was rocking right before the mandibular pressure point technique was used, and the plaintiff recites that. I would say that's a concession that that's what happened. And, in fact, if you look at the video, the magistrate and the plaintiff both recognize what I recognize, that he was moving right before. So this argument that's been made regarding moving and resisting, wouldn't that be an issue of fact? No. No. In the qualified immunity analysis, you have to find the case or cases that establish a bright line, that exactly what Officer Ferguson did crossed the bright line. That's what qualified immunity is all about. Well, you would have to accept that he was moving, not resisting, and then say that even though he was simply moving and not resisting, Officer Ferguson wasn't on notice that he couldn't apply this technique in response to that movement, right? Officer Ferguson perceived that he was resisting by pulling away. The video shows he was moving, which supports Officer Ferguson's reasonable perception. There is no case that says in a situation like that you can't use this minimal level of force. Here's what Officer Ferguson did not do. Officer Ferguson did not tase him. He didn't whack him with his fist. He didn't injure him. He simply used the mandibular pressure point technique. He didn't put a choke hold on him, which plaintiff repeats that he did. He did not. And he did it for nine seconds and then stopped. So there is no case putting anyone on notice that that would violate the Constitution. In fact, there are at least two cases that I've cited, one from the Eighth Circuit and one from the Tenth, I think, that suggest that in situations where a plaintiff was doing much less than what, or much more, rather, excuse me, more force was used in the Jews case than I think it was the Pride case. So I don't know if this helps him on the second, what I will call the second, well, I don't actually, the clearly established prong of qualified immunity. I don't think this case helps him necessarily on that because of the timing issue, but doesn't our decision from last year in Lewis also involve a situation where a suspect was moving and say that is not dispositive to whether there was a Fourth Amendment violation? Which case are you talking about, Your Honor? Lewis. The one that was cited by Plaintiff. Wasn't the guy moving in that case? Lewis was in a completely different procedural. Sure, but that is a case in which someone was moving. We said just because he's moving doesn't mean what you're doing is fine. It doesn't mean like, it doesn't mean that there is necessarily no Fourth Amendment violation simply because someone is moving. Lewis very clearly rejects that proposition. That's true, but I'll flip that on its head a little bit. The plaintiff suggested that if you're restrained, no force can be used. Well, that clearly is not the case. You always have to use force on a suspect. If, for example, he doesn't want to get in the police car, you have to force him to get in the police car. If he doesn't want to be fingerprinted, you have to use some level of force to get him fingerprinted. In this case, some level of force. If the reasonable perception was that he was not complying with legitimate commands to stop moving so that he could be searched, some level of force would be reasonable. And in this case, it was an extremely low level use of force, extremely low level. Mandibular pressure point technique. He was not hurt. Yes, it's true that there was a case in the Sixth Circuit where so much force was used, including the mandibular pressure point technique, and the guy ended up asphyxiating and dying. This is not such a case. That case has no application here because we're talking about a nine-second use of the pressure point technique. There is no case putting Officer Ferguson on notice. How do we know it's a nine-second? You're just asserting that it's a nine-second use of a specific technique that we know is constitutionally okay. How do we know any of that other than the say-so of the defendant? How do we know what the facts are? That it was a proper application of the mandibular. Like, for example, he does allege in that objection we talked about, like, sticking a finger in my ear. Is that how one applies the mandibular technique if one is doing it correctly? Officer Ferguson stated that it's a— I'm not asking what Officer Ferguson said. I'm asking what the plaintiff has asserted. Is it a proper application of the technique to stick your finger—stuck his fingernails behind my ears? You're talking about the complaint? No, I'm talking about his objections to the magistrate. I guess my point is in describing what happened here, it seems to me that you're simply describing what the defendant says that he did as opposed to what the most charitable interpretation to the plaintiff under the video is of what the defendant did. And I think that's the way we have to think about this for summary judgment. You can see on the video he's doing this. Okay. You can see that. Okay. That's what he said he did. That's what the video shows. You can see that part pretty clearly. And I guess you could watch the video and you could count how long it—I mean, you could potentially count how long it lasts. That's what I did. The magistrate said nine seconds. I counted it myself. I came up with nine seconds. I think the plaintiff in their first brief said ten seconds. What do I do with the fact that on the video he says he's still in pain eight minutes later? That undercuts a claim that it was just this kind of force that hurts like heck when it's on, but then it goes away afterwards. The fact that this guy says on the video that he's still in pain eight minutes later suggests that maybe it was something different because if he's in pain eight minutes later— if I'm told that a proper application of this technique should not be painful after the technique stops and on the video he says I'm still in pain eight minutes later, that's at least some evidence that maybe it wasn't that technique. The video, or at least either affidavit or the video or both, also shows that he was released by the EMTs as needing no further medical attention. A lot of cases that this court gets and other courts get, you've got a guy with a broken leg, a broken arm, head injuries, et cetera, et cetera. Here you've got what amounts to the lowest level of force. One of the lower level of forces. How's that? Not the lowest level, you're right. But a very low level of force comparatively speaking. I've had cases in my career and this court has seen cases where people are horribly injured, people have broken bones, people have internal injuries. This is not such a case. The guy walked away from it. But why doesn't that more go to damages, if any, that he could get rather than what— let me ask you this question. I'm going to posit that you don't agree that the facts show this, that the defendant says this isn't what the facts show. But do you agree that it violates the—if a suspect is in fact completely subdued and poses no immediate danger to any officer and no officer could believe that he poses any immediate danger to any officer, any non-de minimis amount of force is excessive? I believe that's what the cases hold. Under your posit, but that's not— No, I understand. But I guess my point is, and do you claim that this technique is a de minimis use of force as a matter of law? I don't claim that. What I claim is there's no case that puts him on notice. No, sure, that's prong two. In this specific situation, it violated the Constitution to use that pressure point. Okay, but so my point is, maybe for the sake of argument, we could say there is some amount of force that is just constitutionally de minimis. Like there's that language in Graham v. Conner that says, like, not every push and shove that may look fine later, fine. Not every push, not every shove. And that suggests that maybe under some circumstances, there's a de minimisness before the Fourth Amendment gets involved. But you don't claim that using this technique is below whatever that level of de minimisness is? I haven't really given it any consideration. I mean, to gratuitously use this technique against somebody violates the Fourth Amendment. I think just—yes, I think you're right. But in this case, that's not what happened. I understand that's not right. And I'll just reiterate, because I think this is the crux of it. Officer Ferguson, in order to have—to lose the cloak of qualified immunity, had to have— Well, but you keep saying qualified immunity. The district court actually found there was no constitutional violation here, right? Well, we argued qualified immunity. No, I understand you argued it. But, like, the decision that we're reviewing is a decision that says there isn't even a constitutional violation. And every time I ask you about that, you pivot to prong two, which is not a concession, but I guess it's noteworthy that every time I ask you about the constitutional violation question, you pivot to clearly established. I don't—well, I don't—what it means is that that is the prong that we clearly went on. That's why I pivot to it. Was there a constitutional violation? No. But if there was, it wasn't clearly established. And I know that this Court has said that the defendant, officer, has the burden of proof. But I will point the Court to Rivas Villegas v. Cortez Luna, a Supreme Court case in which the Supreme Court said, when discussing the second prong, thus to show a violation of clearly established law, plaintiff must identify a case that put the officer on notice that his specific conduct was unlawful. That's what the Supreme Court said. That suggests that the burden's on the plaintiff. But no matter who the burden is on, it's been met here. There's no case, there's no bright line that says that Officer Ferguson could not use the pressure point technique under the specific circumstances of this case. So, Your Honor, my time's almost up. It's been a pleasure as always. This is like the 35th anniversary of me being here for the first time. So I've been here a few more times than my colleagues. A few. On the right. I would ask the Court to affirm summary judgment and to affirm the deniance of the motion. Thank you very much.  Mr. Valdez. Good morning, Your Honors. You may have pleased the Court. Anthony Valdez here as amicus. I wanted to start out my rebuttal by just pushing back on the characterization of the mandibular angle force technique as a minimal level of force. This is a pain compliance technique designed to stop suspects from thrashing around using only a thumb. It is that powerful that you can put your thumb behind and pinch somebody's nerve that it will stop you from doing whatever you need to do. And Officer Ferguson used that technique while bearing his whole weight down on Mr. Anderson. What injuries does your client allege that he had as a result of the technique being used? You know, I would want to go back into the record. One, I guess, we're here on amicus, so just not our client, but I believe he mentioned injuries to his face from the whole encounter. I think, as Judge Heitens pointed out, the extent of those injuries might limit his damages in some way, but that would be for a jury to decide as to the extent of those damages, and he would also need to parcel out. Right, but one of the relevant grand factors is the nature of the force and, you know, the impact of that. So I think that's a relevant question. And you started out by saying, well, this is terrible. And I guess in the abstract it is, but was it in this case? I believe so, Your Honor. I mean, as Judge Heitens referred to, during the encounter, Mr. Anderson, and this is captured on video, mentioned several times that he was in pain after. Let me say his face hurts, which would have been from the fall on the ground, and that his head is hurting from the braids being pulled out. He does say that his face hurts. I don't know if he was making, you know, the record is unclear at this point about whether or not that was due to the fall, but I think it's very likely that it was also due to the fact that you had a thumb pinching into his nerve, you know, a pain compliance technique so powerful that it can stop a suspect from totally resisting. And I think the important thing is that that pain compliance technique was used on somebody who was handcuffed, face down, his pants on the ground, with multiple officers on top of him. Just very quickly on the leave to amend issue, we talked to, there was some discussion about whether or not this was denied on futility grounds. At JA-5, which is the text order denying leave to amend, there's actually four things that Mr. Anderson tries to amend his complaint about. Three of the four were explicitly denied because of futility, and the thing that we are arguing about was not, like the magistrate judge said, didn't say that that was. It basically says you have no good excuse for why you're flip-flopping again. Absolutely correct. And that's in contrast to the other three things that were denied explicitly for futility. So I don't think that it's fair to characterize this fourth one as being futile, or at least the magistrate judge didn't think so. That's fair. But, you know, we often say, well, the district court got it right even if he got it wrong, you know, for the wrong reason. But so the question is, notwithstanding what the court said, is there a basis on which this court can affirm based on futility? I don't think so, Your Honor. I think what Mr. O'Boyle was saying earlier is that the specific complaint that leave to amend is about, is about this sexual assault, and the video is covered up at that point. So there would be some dispute about what actually occurred there. So it wouldn't necessarily be futile, especially if you're amending the complaint at the beginning of the litigation. Is there a dispute? I mean, you know, Mr. Morgan made much of the fact that Mr. Anderson did not file an affidavit, and I think with respect to the videotape and what actually happened affirmatively on the videotape, that's, I think, an effective rebuttal to that. But is the lack of evidence enough to create a genuine issue of material fact? I mean, you're saying that the video was obscured. Okay, well, in that case, it seems incumbent upon the plaintiff to come forward and say, this is what happened. Well, I think at that stage of the litigation, we weren't even at summary judgment at that point. I mean, he was trying to amend his original complaint. So I think at that, that was pre-discovery. So it would just be at a completely different stage, and the burdens would be much lower. Right, so it's not futile because we predict that he might get summary judgment granted against him. It's only futile if we predict it would fail to state a claim on which relief could be granted that are as defective for some other reason? That's absolutely right. Another point I wanted to touch on very briefly is just, as you identified, Officer Ferguson and his counsel are essentially trying to flip Scott v. Harris on its head. We are not saying that Mr. Anderson deserves summary judgment here and that we must ignore Officer Ferguson's affidavit. Instead, what we are saying is that the video draws into question the narrative that he creates. It creates ambiguity here. Well, and it provides some of its own narrative, too, right? I mean, the video is affirmative evidence of some things.  I've watched this video close to 50 times, and what I see is a suspect on the ground, handcuffed, not really— I mean, there's no movement on there that could be characterized as resistant. And that's the last point I wanted to touch on, is that this court has never said that you need to be still as a statute in order to not be resisting arrest. I mean, small, instinctual movements are okay under this court's excessive force analysis. And I think that this case, in terms of being clearly established, comfortably falls within the court's— What case puts Mr. Ferguson on notice? Because he's making this argument regarding his qualified immunity argument. What puts him on notice that the pressure point technique was not acceptable? Well, I think I would point to four cases, really. Jones v. Buchanan, Myers v. Baltimore County, Bailey v. Kennedy, and Kane. Now, none of those cases explicitly used the mandibular angle force technique, but, I mean, they were involving punches and, you know, pushing into the ground. I mean, they were applying this rule against using a necessary, gratuitous, disproportionate force against somebody who's secured, no longer a threat, and not resisting, and basically saying, you know, it's not limited to the particular weapon you're using. It's not just about a taser or a kick or a punch. It's about using force, more than de minimis force, in that context against somebody. His argument would be proportional force to the movement, right? I mean, it's hard for me to see, and I think the upshot of these cases, that it's hard to see what sort of force, beyond just de minimis force, you can really use against somebody who's in handcuffs with multiple officers on the ground that isn't, can't really be characterized as resisting, at least how, you know, construing the video as we must at this stage. For those reasons, we'll rest. Thank you, Your Honor. Thank you, Mr. Valdez. I want to thank both counsel for their fine arguments here this morning. Mr. Morgan, you said you've been at this for 35 years. You're still going quite strong. 35 years from now, we hope Mr. O'Boyle and Mr. Valdez that we'll see you back here because you've done honor to your client and to your law school in representing, at least as amicus, the interests of Mr. Anderson, and we really appreciate your fine arguments here this morning. We'll come down and greet you and move on to our second case.
judges: Albert Diaz, Toby J. Heytens, DeAndrea Gist Benjamin